

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TOMEN AMERICA, INC. | * | CIVIL ACTION |
| | * | |
| Plaintiff | * | NO. 00-0157 |
| | * | |
| VERSUS | * | SECTION "N" |
| | * | Honorable Edith Brown Clement |
| | * | |
| BARGES ING 828 AND ING 866, their | * | MAGISTRATE DIV. 2 |
| engines, tackle, apparel, etc., *in rem*, and | * | Magistrate Judge Wilkinson |
| INGRAM BARGE COMPANY, *in personam* | * | |
| | * | |
| Defendants | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PRE-TRIAL ORDER

### 1. PRE-TRIAL CONFERENCE

The Pre-Trial Conference in this action was held at 9:50 a.m. on September 28, 2000.

### 2. APPEARANCE OF COUNSEL

John F. Fay, Jr. (1870)
Deutsch, Kerrigan & Stiles, LLP
755 Magazine Street
New Orleans, LA 70130
Telephone: (504) 581-5141
Telefax: (504) 566-1201
**Attorneys for Tomen America, Inc.**

DATE OF ENTRY

SEP 2 8 2000

1

Don K. Haycraft, Esq. (14361)
Carol Welborn Reisman (20410)
Liskow & Lewis
One Shell Square
701 Poydras Street
Suite 5000
New Orleans, Louisiana 70139
**Attorneys for Ingram Barge Company**

### 3. DESCRIPTION OF THE PARTIES

Plaintiff, Tomen America, Inc., was the owner of consignments of soybeans that are alleged to have been damaged as a result of the unseaworthiness of defendant Ingram Barge Company's barges. Ingram Barge Company was the owner/operator/or owner *pro hac vice* of the Barges ING-828 and ING-866, which transported cargoes of soybeans from Cincinnati to the Port of New Orleans.

### 4. JURISDICTION

Jurisdiction is founded on the Court's admiralty and maritime jurisdiction, pursuant to 28 U.S.C. §1333(1). Jurisdiction is uncontested.

### 5. PENDING MOTIONS

No motions are pending or contemplated.

### 6. SUMMARY OF MATERIAL FACTS

(a)     **By Plaintiff Tomen America, Inc.**

This action involves an admiralty and maritime claim for water and odor damage to a shipment of soybeans owned by plaintiff, Tomen America, Inc. The defendant, Ingram Barge Company, is the owner and operator of barges ING-828 and ING-866, which carried the soybeans from midwestern ports to New Orleans. Plaintiff claims, and suggests the evidence will show, that

the soybeans were in good condition at the time the shipper, CGB, delivered them to Ingram and the barges, as evidenced by certificates issued by the U.S. Department of Agriculture, Federal Grain Inspection Service. Upon the barges arrival in New Orleans, probe samples of the beans taken from various locations within each barge indicated the beans were still in good condition.

For approximately two weeks following the barges arrival in New Orleans, persistent and at times heavy rains prevented the soybeans from being discharged from the barges and loaded aboard the ocean-going vessel that would carry them to their ultimate destination in Japan. When the barges were finally discharged the analysis performed by the Federal Grain Inspection Service established that the soybeans had become wet and/or had become sour. At the time the Federal Grain Inspectors determined the wet and/or sour condition of the beans, the majority of the cargo was discharged from the barges and was within the conveyors, elevating equipment or bins of the grain elevator at Cargill, Incorporated. Efforts to mitigate the loss by aerating or blending were explored but were not feasible. Accordingly, Tomen mitigated its loss by selling the damaged beans to the elevator that discharged them from the barges. This mitigation effort resulted in a saving of additional elevation, handling and transportation expenses.

At the time the damage to the beans was discovered all the cargo from one of the barges and the majority of the cargo in the second barge had been discharged. However, the covers of both barges were inpected and in both cases showed evidence of leaks into the cargo compartments. In addition, the water drainage channels for the covers of one of the barges were clogged and therefore did not permit proper drainage of water from the covers. The wetting and odor damage to the beans were caused by the deficiencies in the barges' covers and drainage channels.

As a result of defendant's fault and/or breach of the contract of carriage, and the unseaworthiness of the barges, Tomen sustained damages in the amount of $75,619.96, representing the loss in value of the soybeans and the costs incurred to mitigate the dead freight claim it faced from the owner of the ocean vessel because of insufficient cargo being available due to the damage caused by Ingram.

(b) **By Defendant Ingram Barge Company**

Ingram was contracted by Consolidated Grain & Barge in December 1997 to transport a cargo of soybeans to be carried aboard the ING-828 and the ING-866. Approximately 50,000 bushels of beans were to be transported in each barge. It appears that Tomen then purchased the beans from Consolidated that was loaded in these barges on CIF New Orleans terms.

The barges were loaded on December 12-13, 1997, near Cincinnati, Ohio. The barges were inspected there and accepted by Consolidated Grain, indicating that the barges and covers were considered to be in satisfactory condition and fit for their purpose. Bills of Lading were issued that made **no** reference to any special nature of the beans to be carried. No notice was provided to Ingram by Continental Grain or the beans' purchaser, Tomen, that these were premium quality, food grade soybeans intended for a special market in Japan. Accordingly, Ingram took no special precautions in placing these particular barges for loading of this cargo, as Ingram was only notified that "beans" were to be loaded aboard its barges. Had Ingram been properly advised of the premium nature of this cargo, this claim would not have arisen. Precautions would have been taken concerning the fitness of the barge hopper covers.

The beans arrived in the New Orleans area on approximately January 9, 1998. This was a normal transit time. An agent for Tomen, Russell Marine, took samples from the two barges. They

were in good, merchantable condition. The Federal Grain Inspection Service graded these beans on January 9, 1998, and they were found to be in good merchantable condition at that time. However, the ship that Tomen wished to ship these beans aboard was delayed in arrival. In sum, the barges arrived in New Orleans in normal transit time and were in sound condition upon arrival.

Once Tomen's selected ship arrived late and was ready for loading, the barges were called to the Cargill elevator for loading. At that time, the beans on the barges were downgraded as "sour" at the time of discharge from the ING-828 and the ING-866.

Ingram contends that rainwater entered only one of the two barges and damaged any portion of the beans. The sampling done by the grain inspectors of the second Ingram barge, also downgraded as "sour," showed **no** water damage or increase in moisture content of the beans from the time they had been loaded several weeks before. Accordingly, Ingram contends that the cargo of beans in the ING-866, downgraded as having a "sour" smell, must have suffered deterioration due to an inherent vice of the beans rather than from ingress of water or moisture into that barge. Ingram contends that the "sour" downgrading of the beans in the ING-866 was not caused by any fault of the barge.

Ingram admits some water-damaged beans in the ING-828. Ingram disputes, however, the amount of damages attributable to that damage and the "sour" downgrading of the beans in that barge. Ingram further disputes that Tomen can claim any consequential damages, whereby Tomen had to "partition" cargo in the ship. The only proper item of damages is the diminution of market value of the allegedly damaged cargo.

### 7. **UNCONTESTED MATERIAL FACTS**

1) Tomen was at all material time the owner of the soybeans in question.

2)      Ingram was the owner/operator/or owner pro hac vice of the ING-828 and ING-866.

## 8. CONTESTED MATERIAL FACTS

1)      Whether the soybeans delivered to Ingram and loaded aboard its barges were in good order and condition at the time of delivery.

2)      Whether Ingram breached its duty of care owed to the cargo and its owner by allowing the soybeans to become wet and/or sour during the voyage in question.

3)      Whether there is any requirement for a shipper to specify the grade of soybeans being shipped.

4)      Whether Ingram negligently maintained its barges.

5)      Whether the barges were unseaworthy because they leaked.

6)      The nature, cause and extent of Tomen's damages.

7)      Whether Continental Grain and/or Tomen were comparatively at fault for failing to notify Ingram of the special grade of the beans to be shipped on Ingram's barges.

8)      The market value of the beans on the date of purchase by Tomen and the diminished market value of the beans in a "sour" grade on that date;

9)      Whether there was any water ingress into the ING-866 or the ING-828;

10)     Whether Tomen properly mitigated its damages by attempting to blend, aerate, or otherwise dry the beans;

11)     Reasons for the delay of the designated ship in which these beans were to be loaded;

12)     Moisture content of the beans in the barges at loading and discharge;

13)     Whether Consolidated Grain and/or Tomen properly issued Bills of Lading in this instance by identifying the cargo simply as "beans";

14)     The amount of damages sustained by Tomen relative to these cargoes of beans.

15)     Any issue of fact implicit in the parties statement of the case or the following contested issues of law.

## 9. CONTESTED ISSUES OF LAW

1)   Whether Ingram breached its duty of care owed to the cargo and its owner by providing leaking barges for the carriage of the soybeans.

2)   Whether any duty exists on the part of a shipper to designate a particular grade or type of soybean being shipped.

3)   Whether delivery of the beans to the barges in good order and condition and subsequent delivery to Tomen in damaged condition establishes a *prima face* case of liability against Ingram.

4)   Whether the damage found at the destination is presumed to have occurred while the soybeans were in the custody of Ingram.

5)   Whether the defendants are liable for the damages to the soybeans that were caused while the beans were in Ingram's care, custody and control.

6)   Ingram's liability for damages caused by the unseaworthy condition of the barges.

7)   Whether plaintiff acted reasonably in mitigating its damages.

8)   Whether Consolidated Grain and/or Tomen fulfilled their duty, if any, to notify Ingram that the beans to be shipped were of a special quality category, intended for a special market in Japan.

9)   Whether Consolidated Grain and/or Tomen were negligent in failing to notify Ingram of the special quality of the cargo to be shipped.

10)  Whether Ingram can be liable for consequential damages in these circumstances.

11)  Whether any exceptional circumstance exists to warrant denial of prejudgment interest on plaintiff's claim.

12)  Any issue of law implicit in, related to or suggested by the foregoing contested issues of fact.

## 10. EXHIBITS

### Which May Be Introduced at Trial by Tomen America, Inc.

1. CGB Contract Confirmation and Sales Delivery Sheets for the sale to Tomen (hearsay);

2. Invoice from Tomen to Cargill for the sale of the damaged soybeans (hearsay);

3. Official Grain Inspection Certificates for the soybeans loaded aboard barges ING 828 and ING 866;

4. Reports of Central Analytical Laboratories (hearsay);

5. Barge bills of lading;

6. Correspondence between RMG and Ingram (too general);

7. Survey reports issued by Marship Marine with respect to barges ING 828 and ING 866 (hearsay);

8. FGIS certificates regarding condition of the cargo;

9. Tomen's 12/29/97 "Revised" cargo declaration (hearsay);

10. Southport faxes dated 1/12/98 and 1/14/98 (hearsay);

11. RMG faxes to Tomen dated 1/14/98 and 1/15/98 (hearsay);

12. Southport's Port Log/Statement of Facts (hearsay);

13. RMG's handwritten barge summary of soybean barges (hearsay);

14. Any contract for the purchase or sale of the subject cargo (hearsay);

15. CGB's contract with Ingram for the carriage of the soybeans;

16. Affreightment contracts or other contracts of carriage entered into by Ingram for the carriage of grain or bean cargoes, and Ingram's "FYI" and "Bill of Lading" notices (too general);

17. Any documents relevant to the opinions expressed by Ingram's experts, or necessary for rebuttal to same (too general);

8

18. USCG Port Information Exchange printouts of barge ages; and

19. Any document identified in discovery or by any party in its list of exhibits (too general).

**Which May Be Introduced at Trial by Ingram Barge Company**

1. Grain inspection certificates issued at Cincinnati, Ohio dated December 12, 1997;

2. Bills of Lading (6945 and 6946);

3. RMG correspondence dated January 15, 1998, from Patrick Russell to Cargill;

4. Port log/Statement of Facts;

5. Handwritten notes of unknown person (Tomen's Response to Request No. 10);

6. Ingram Barge Company confirmation of barge freight sale dated December 5, 1997;

7. Barge Trade Rules of the National Grain and Feed Association (relevance, hearsay);

8. Sampling of Bills of Lading attached to John Kristen's expert report of August 15, 2000 (relevance; hearsay).

### 11. DEPOSITION TESTIMONY

Either party may use the deposition testimony of any witness unavailable for trial.

### 12. DEMONSTRATIVE EVIDENCE

Either party may use charts or graphs for demonstrative purposes.

### 13. WITNESSES

**Witnesses Who Will Be Called by Tomen America, Inc.**

1. Mr. T. Arima and/or Mr. Hiro Nagakari
   and/or other representative of
   Tomen Corporation
   Buffalo Grove, IL

Concerning the purchase of the soybeans, their condition on loading and discharge, the value of the soybeans, the nature, cause and extent of the loss sustained by Tomen, and the custom and practice concerning the shipment of soybeans;

**Witnesses Who May Be Called by Tomen America, Inc.**

1. Mr. Pat Russell
   101 Woodland Hwy.
   Belle Chasse, LA  70037

   Concerning inspections, surveys and FGIS analysis of the soybeans, practices for handling the soybean cargoes arriving in New Orleans, the condition of the soybeans at the material times, the circumstances and conditions, including weather, surrounding the discharge of the barges and loading of the ship, and the nature, cause and extent of the damages;

2. Mr. Larry Vanderbrook
   Russell Marine Group
   101 Woodland Hwy.
   Belle Chasse, LA  70037

   Concerning inspections, surveys and FGIS analysis of the soybeans, practices for handling the soybean cargoes arriving in New Orleans, the condition of the soybeans at the material times, the circumstances and conditions, including weather, surrounding the discharge of the barges and loading of the ship, and the nature, cause and extent of the damages;

3.. Mr. Roger Smith
   332 S. Canterbury
   LaPlace, LA  70068

   Concerning his surveys of the barges in question and the leaking conditions and evidence of water entry into the cargo hoppers he noted during those inpections;

4. Mr. John Shropshire, and/or other FGIS Inspectors concerning their sampling and analysis of the soybeans;

5. Ryd Wallerstedt and/or other representative of CGB concerning the sale of the soybeans to Tomen, the custom and practice concerning the transportation of soybeans by barge, and the terms of the contract of carriage between CGB and Ingram;

6. Any witnesses or surveyor who has knowledge of the condition of the subject cargo at the material times;

7. Any witness who obtained samples of the subject cargo or who analyzed same;

8. A representative of Ingram or any independent surveyor or witness having knowledge of the condition of either of the subject barges, or of repairs or maintenance thereto;

9. A representative or representatives of any company that performed repairs to or maintenance on, the subject barges;

10. A representative of Cargill and/or any other purchaser of the subject cargo;

11. Timothy Garrett, Robert Ritz, "MF", "DWS" or other representatives of FGIS and/or Tri-State Grain Inspection Service concerning their sampling and analysis of the soybeans;

13. John M. Reuther or other representative of Central Analytical Laboratories, Inc. concerning its analysis of the soybeans;

14. Any witness knowledgeable of the terms of the contract of carriage;

15. Alan Welsh, Dan Roussel or other representative of Ingram;

16. Richard Hawco or other representative of Kroll Marine;

17. Ernestine Toplin, U.S. Dept. of Agricultural, Destrahan, LA;

18. Mr. George Pearson, or other representative of Southport Agencies; and

19. Any witness identified in discovery or identified by any other party.

**Witnesses Who Will Be Called by Ingram Barge Company**

1) Terry Rooney
   1671 White Pines Court
   Naperville, IL  60563

   Mr. Rooney, an expert in the grain distribution industry, will testify concerning the alleged damages claimed by Tomen and the market prices for beans on relevant dates.

2)   John Kristen
     c/o Ingram Barge Company
     One Belle Meade Place
     Nashville, TN 37202

Mr. Kristen, Ingram's manager of grain sales and merchandising, will testify regarding this shipment of beans, and the custom in the industry regarding the notation on Bills of Lading for extraordinary graded product or product intended for human consumption. Mr. Kristen will testify concerning what steps Ingram takes to provide special care to such cargoes when so notified.

**Witnesses Who May Be Called by Ingram Barge Company**

1)   Alan Welch
     c/o Ingram Barge Company
     One Belle Meade Place
     Nashville, TN 37202

Mr. Welch, Ingram's claim manager, may testify concerning Tomen's claim and the damages therein.

### 14. JURY OR NON JURY TRIAL

This is a non-jury case.

### 15. BIFURCATION

The issue of liability will not be tried separately from damages.

### 16. DISPOSITION OF THIS CASE

Counsel for Tomen believes an additional settlement conference may assist the parties in reaching a resolution of the claims.

### 17. TRIAL

Trial shall commence on October ~~10~~ 12, 2000 at ~~10:00 a.m.~~ 1:00 p.m. and is anticipated to last one to two days.

## 18. PRE-TRIAL ORDER

This pre-trial order has been formulated after a conference at which counsel for the respective parties have appeared in person. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

## 19. POSSIBILITY OF SETTLEMENT

Counsel have participated in a settlement conference with Magistrate Chasez and are continuing to explore the possibility of settlement.

Respectfully submitted,

_____
John F. Fay, Jr. (1870)
Deutsch, Kerrigan & Stiles, LLP
755 Magazine Street
New Orleans, LA 70130
Telephone: (504) 581-5141
Telefax: (504) 566-1201
**Attorneys for Tomen America, Inc.**

_____
Don K. Haycraft, Esq. (14361)
Carol Welborn Reisman (20410)
Liskow & Lewis
One Shell Square
701 Poydras Street
Suite 5000
New Orleans, Louisiana 70139
**Attorneys for Ingram Barge Company**

_____
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has been forwarded to all counsel of record by hand on this **27th** day of September, 2000.

_____
John F. Fay, Jr.